*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDREW JAMES CHRISTIANSEN,

        Defendant-Appellant.

UNPUBLISHED
July 06, 2026
11:20 AM

No. 377529
Macomb Circuit Court
LC No. 2025-000731-FH

Before: BAZZI, P.J., and RICK and MALDONADO, JJ.

PER CURIAM.

Defendant, Andrew James Christiansen, appeals by leave granted[1] the circuit court's order denying his motion to quash the bindover and his motion to dismiss on First Amendment grounds. Christiansen was bound over to the circuit court on charges of unlawfully posting a message, MCL 750.411s; stalking, MCL 750.411h; and two counts of using a computer to commit a crime, MCL 752.797(3)(a) and (c). We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of a series of phone calls and Facebook posts that Christiansen made regarding Stefan Karpuk, a police officer with the Eastpointe Police Department (EPD). In an October 25, 2024 phone call, Christiansen called the St. Clair Shores Police Department (SCSPD) and requested that they arrest Officer Karpuk because he allegedly assaulted Christiansen while booking him for an unrelated offense. During the phone call, Christiansen stated that he was going to go to Officer Karpuk's church the following Sunday, and Officer Karpuk was "going to get a surprise."

---

[1] *People v Christiansen*, unpublished order of the Court of Appeals, entered November 13, 2025 (Docket No. 377529).

Later that day, an EPD detective called Christiansen to inquire about his statements to the SCSPD. Christiansen denied making any threats and explained that he wanted to go to Officer Karpuk's church to speak with his pastor and potentially have him kicked out of the congregation. On the same day, Christiansen made the following Facebook post:

> According to EPD, [m]e saying I'm going to Stephan [sic] Karpuk[']s church on [S]unday is a threat.

> It[']s only a threat if you're guilty of something. I wanted to speak to the pastor.

> So me saying I'm going to church means I need mental help?

> Are you kidding me?

> This is HARASSMENT!!!!

On November 11, 2024, Christiansen made another Facebook post that said:

> I say I'm going to Karpuk's church and police show at my door and start calling me. The [a**hole] who is 3 times my size, assaulted me, arrested me over nothing after making threats to me starts stalking my house after I've complained, hitting me with more charges after complaints made traction? Nothing. . . . This man Badge #120 needs to be fired & I won[']t be satisfied until I have possession of his pension.

Officer Karpuk was contacted by several individuals who informed him of Christiansen's posts. EPD Lieutenant Andrew Wood called Officer Karpuk to inform him that a defendant in one of his active cases was making threats. Officer Karpuk also received a call from the monsignor at his church, who warned him that someone made a threat indicating that they would be waiting for him during a church service. Officer Karpuk also stated that other officers in his command reached out to him regarding Christiansen's posts.

Christiansen was initially charged with one count of unlawfully posting a message and one count of stalking. The district court held a preliminary examination, and thereafter bound Christiansen over to the circuit court on his original charges, adding an associated charge of using a computer to commit a crime for each originally-charged offense. In the circuit court, Christiansen filed a motion to quash the bindover and a motion to dismiss his charges. Following a hearing, the circuit court issued an order denying Christiansen's motions to quash and dismiss. This interlocutory appeal followed.

## II. MOTION TO QUASH

Christiansen argues that the district court abused its discretion by binding him over on the charge of unlawfully posting a message, and thus, the circuit court erred by denying his motion to quash the bindover. While we agree that the district court made an error of law in evaluating the elements of MCL 750.411s, we nonetheless affirm because the evidence was sufficient to establish probable cause on each element of Christiansen's unlawful-posting charge.

This Court has announced the following principles with respect to reviewing a bindover decision on appeal:

> In the context of reviewing a district court's bindover decision, the order on appeal is the circuit court's decision denying the motion to quash, which we review de novo (i.e., with no deference) because the dispositive question is whether the district court abused its discretion in binding over defendants. Thus, although we give no deference to the circuit court's findings in its review of the district court decision, we give a great deal of deference to the *district court's* decision; that is, we review that decision for an abuse of discretion. [*People v Crumbley*, 346 Mich App 144, 166; 11 NW3d 576 (2023) (citations omitted).]

"An abuse of discretion occurs when a decision falls outside the range of reasonable and principled outcomes, and a trial court necessarily abuses its discretion when it makes an error of law." *Id*. at 167 (quotation marks and citation omitted). "However, [t]o the extent that a lower court's decision on a motion to quash the information is based on an interpretation of the law, appellate review of the interpretation is de novo." *Id*. (quotation marks and citations omitted; alteration in original). Statutory interpretation is a question of law that this Court reviews de novo. *People v Butka*, 514 Mich 366, 376; 22 NW3d 429 (2024).

"The primary function of the preliminary examination is to determine whether a crime has been committed and, if so, whether there is probable cause to believe that the defendant committed it." *People v Francis*, 347 Mich App 560, 563; 16 NW3d 323 (2023) (quotation marks and citation omitted). "A bindover is required when probable cause exists to support each of the elements of a crime," *People v Plunkett*, 485 Mich 50, 61; 780 NW2d 280 (2010), and "[t]he district court must bind a defendant over to the circuit court if it determines that a felony was committed and that there was probable cause to charge the defendant," *Francis*, 347 Mich App at 563-564. This Court will not disturb a district court's finding of probable cause "unless the determination is wholly unjustified by the record." *Id*. at 564 (quotation marks and citation omitted). "In the context of a bindover to the circuit court, [p]robable cause requires evidence sufficient to make a person of ordinary caution and prudence . . . conscientiously entertain a reasonable belief of the defendant's guilt." *Id*. at 565 (quotation marks and citation omitted; alteration in original).

Christiansen challenges the bindover with respect to his charge for unlawfully posting a message. MCL 750.411s provides the elements of the offense and states, in relevant part:

> (1) A person shall not post a message through the use of any medium of communication, including the internet or a computer, computer program, computer system, or computer network, or other electronic medium of communication, without the victim's consent, if all of the following apply:

> (a) The person knows or has reason to know that posting the message could cause 2 or more separate noncontinuous acts of unconsented contact with the victim.

> (b) Posting the message is intended to cause conduct that would make the victim feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(c) Conduct arising from posting the message would cause a reasonable person to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(d) Conduct arising from posting the message causes the victim to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

This Court provided a detailed overview of MCL 750.411s in *Buchanan v Crisler*, 323 Mich App 163, 176-181; 922 NW2d 886 (2018). It noted that "MCL 750.411s criminalizes cyberstalking *by proxy*, meaning that the focus should be on the effect of the conduct arising from [the defendant's] postings." *Id*. at 194 (emphasis added). Regarding the elements of the offense, this Court explained:

> MCL 750.411s does not prohibit an actor from posting any and all messages of every kind. Rather, as set forth in MCL 750.411s(1)(a), posting a message about the victim through any medium of communication, without the victim's consent, is prohibited if four basic elements are met. Notably, the focus of these elements is on the conduct the actor intended to cause by posting the message and the effect of that conduct. Specifically, the first and second elements relate to the knowledge and intent of the person posting the message in terms of what conduct would result from the postings, while the third and fourth elements relate to the effect of the conduct that occurs because of the postings. [*Id*. at 178-179.]

This Court emphasized that because the statute prohibits cyberstalking or cyberharassing by proxy, "it is not the postings themselves that are harassing to the victim; rather, it is the unconsented contacts arising from the postings that harass the victim." *Id*. at 180. It further explained:

> [T]he statute envisions a scenario in which a stalker posts a message about the victim, without the victim's consent, and as a result of the posting, others initiate unconsented contacts with the victim. These unconsented contacts, arising from the stalker's postings, result in the harassment of the victim. In this manner, by posting a message that leads to unconsented contact, the stalker is able to use other persons to harass the victim. [*Id*.]

Following a preliminary examination, the district court found probable cause to support the elements of Christiansen's felony offenses of unlawfully posting a message and using a computer to commit a crime, and reasoned as follows:

> [M]essages were clearly posted here. It was two separate non-continuous acts, okay. The issue here is really was it intended to cause conduct that would make Stefan Karpuk feel harassed, intimidated or threatened and the standard is a reasonable person.
>
> Well, it's clear that [the Facebook posts] need to be interpreted in the color, the light of the background if you will of [the phone calls]. Okay, these are publicly posted, they're on [Facebook] they are available to anybody who is on [Facebook].

-4-

Frankly, I think that a reasonable person could find these to be harassing, intimidating or threatened [sic] as against particularly the background of [the phone calls].

Frankly I could see a reasonable person, a finder of fact, going to a church that you don't belong to, that you have found out that the alleged victim attends. In our culture that could be very threatening. I mean, come on, we don't need to pretend. You know through the last probably decade the number of very ugly, violent, threatening incidents that have happened at churches. I'm simply looking at how a reasonable person who has read the papers or listened [to] the news for the last decade could interpret this.

. . . So based upon these messages as they—as they're colored, interpreted, the background of . . . the phone calls I'm satisfied that there's been probable cause on all the necessary elements and also it's clear that these were done via computer.

We conclude that the district court erred by focusing on the postings themselves, rather than evaluating whether any unconsented contacts arose from the postings and the effect of those contacts. As this Court made clear, "it is not the postings themselves that are harassing to the victim; rather, it is the unconsented contacts arising from the postings that harass the victim." *Buchanan*, 333 Mich App at 180. By missing the objective inquiry in its analysis of Christiansen's unlawful-posting charge, the district court made an analogous error to the trial court in *Buchanan*. See *id*. at 194 (determining that the trial court erred by focusing on the effect of the respondent's postings rather than the effect of the conduct arising from the postings).

Despite the district court's flawed analysis, we nonetheless conclude that each element of Christiansen's unlawful-posting charge was supported by probable cause and therefore necessitated his bindover. See *Plunkett*, 485 Mich at 61 ("A bindover is required when probable cause exists to support each of the elements of a crime."). First, under MCL 750.411s(1), the evidence clearly demonstrates that Christiansen made phone calls and posted messages on Facebook, which Officer Karpuk testified he did not consent to.[2]

Under MCL 750.411s(1)(a), the prosecution presented sufficient evidence to establish probable cause that Christiansen knew "or ha[d] reason to know that posting the message[s] could cause 2 or more separate noncontinuous acts of unconsented contact with [Officer Karpuk]." MCL 750.411s(8)(j) defines "[u]nconsented contact" as "any contact with another individual that is

---

[2] We note that while Christiansen's unlawful-posting charge partially arises from his calls with the SCSPD and EPD, the parties do not address whether a phone call constitutes "[p]ost[ing] a message" under MCL 750.411s(8)(i). We note that a phone call does "otherwise communicate information," *id*., and is made through a "medium of communication," MCL 750.411s(1). Though the text of MCL 750.411s focuses on electronic methods of communication, there is no indication that the statute is limited only to those media. Because the parties do not contest the issue, we accept for the purposes of this analysis that Christiansen's phone calls could be considered posting a message under the statute.

initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." Activities that constitute unconsented contact include:

>     (*i*) Following or appearing within sight of the victim.

>     (*ii*) Approaching or confronting the victim in a public place or on private property.

>     (*iii*) Appearing at the victim's workplace or residence.

>     (*iv*) Entering onto or remaining on property owned, leased, or occupied by the victim.

>     (*v*) Contacting the victim by telephone.

>     (*vi*) Sending mail or electronic communications to the victim through the use of any medium, including the internet or a computer, computer program, computer system, or computer network.

>     (*vii*) Placing an object on, or delivering or having delivered an object to, property owned, leased, or occupied by the victim. [MCL 750.411s(8)(j)(*i*) through (*vii*).]

In his initial call to the SCSPD, Christiansen requested that Officer Karpuk be arrested and indicated that he planned to show up at his church to give him a surprise. From these statements, a person of ordinary caution and prudence could infer that Christiansen knew his phone call would cause other people to make unconsented contact with Officer Karpuk, whether that be through arresting him or otherwise contacting him regarding Christiansen's allegations. See *People v Anderson*, 501 Mich 175, 181-182; 912 NW2d 503 (2018) (noting that a bindover decision may be supported by evidence from which the elements of the crime can be inferred). In his second phone call, Christiansen maintained that he wanted to go to Officer Karpuk's church to speak with his pastor and possibly have him kicked out of the congregation. That too, would potentially give rise to an unconsented contact between Officer Karpuk and a member of his congregation. The content of the Facebook posts also supplies probable cause that Christiansen knew or had reason to know that the posts would give rise to unconsented contacts. Christiansen posted on an online public forum, accusing Officer Karpuk of harassment, assault, and stalking. In the posts, Christiansen called for Officer Karpuk to be fired, and identified his full name, place of employment, and badge number. The inflammatory and accusatory nature of these posts sufficiently demonstrate that Christiansen knew or had reason to know that unconsented contacts would arise from them.

Under MCL 750.411s(1)(b), the prosecution presented sufficient evidence to establish probable cause that Christiansen posted the messages with the intent "to cause conduct that would make [Officer Karpuk] feel terrorized, frightened, intimidated, threatened, harassed, or molested." As stated above, in his posts Christiansen called for Officer Karpuk to be arrested, fired from his job, and kicked out of his congregation. If anyone viewing the posts were to take action consistent

with Christiansen's requests, that conduct would certainly make Officer Karpuk feel intimidated, threatened, or harassed. Although Christiansen denied making any threats or meaning any harm with regard to his statement that he would show up at Officer Karpuk's church, his repeated public accusations against Officer Karpuk at least raise a factual issue regarding his intent. See *People v Yost*, 468 Mich 122, 128; 659 NW2d 604 (2003) (noting that a defendant should be bound over where the evidence conflicts or raises a reasonable doubt regarding the defendant's guilt). Accordingly, probable cause existed with respect to this element.

Further, the evidence demonstrates that Officer Karpuk was subject to two or more unconsented contacts from his supervisor, Lieutenant Wood, and the monsignor of his church, both of whom called to inform Officer Karpuk about Christiansen's threats. On this point, Christiansen argues that the contacts from Officer Karpuk's supervisor and monsignor were not unconsented. As noted above, "[u]nconsented contact" is "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." MCL 750.411s(8)(j). At the preliminary examination, Officer Karpuk testified that he did not necessarily want to be contacted by other officers in his command and his monsignor. This testimony and the inferences arising therefrom are sufficient to establish probable cause at the preliminary-examination stage.

Christiansen argues that the contacts could not be unconsented given Officer Karpuk's relationship with the individuals. However, a person of ordinary caution and prudence could infer that Officer Karpuk did not consent to or desire to be subjected to multiple unsolicited contacts from his coworkers and a leader in his religious community to inform him of the ongoing threats and accusations that Christiansen was making. Further, the mere fact that Officer Karpuk had a professional relationship with some of the individuals who contacted him does not necessarily preclude the finding that the contacts were unconsented. See *Buchanan*, 323 Mich App at 194 (noting that if contacts from the petitioner's professional colleagues could be considered unconsented, the next inquiry would be how the unconsented contacts made the petitioner feel and how they would make a reasonable person feel).[3]

Under MCL 750.411s(1)(c), the prosecution presented sufficient evidence to establish probable cause that the "[c]onduct arising from posting the message[s] would cause a reasonable person to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested." Officer Karpuk testified that he was contacted by Lieutenant Wood, other officers in his command, and the monsignor of his church about Christiansen's postings. Lieutenant Wood informed Christiansen that a defendant in one of his active cases was making threats, and Officer Karpuk continued to receive calls from Lieutenant Wood because of Christiansen's ongoing Facebook activity. The monsignor also called Officer Karpuk's cell phone

---

[3] Relevant considerations with respect to this inquiry may include the relationship between the victim and person contacting them and whether the victim expressed a desire to avoid or stop the contact. See *Berryman v Mackey*, 327 Mich App 711, 722-723; 935 NW2d 94 (2019) (interpreting an identical definition of "unconsented contact" under the stalking statute, MCL 750.411h(1)(f)).

"to caution [him] that there was a threat for someone to be waiting for [him] at mass at [his] church."

Although the substance of Christiansen's threats were conveyed by other individuals, receiving phone calls from coworkers or church-community members regarding the existence of ongoing threats could cause a reasonable person to suffer emotional distress and feel intimidated, threatened, or harassed. Christiansen acknowledges as much, stating, "Objectively, a phone call from an acquaintance informing you that someone else has been posting about you on social media and about their plan to go to your place of worship to 'surprise' you could be concerning and cause distress." Accordingly, there was sufficient evidence presented on this element of the offense.

Finally, under MCL 750.411s(1)(d), the prosecution presented sufficient evidence to establish probable cause that the "[c]onduct arising from posting the message[s] cause[d] [Officer Karpuk] to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested." Officer Karpuk testified that after receiving multiple calls from Lieutenant Wood about Christiansen's ongoing postings, he deleted his Facebook account and began taking his trash to the garbage truck so that nobody would go through it if he left it on the curb. He also began going to church with a gun and scanning the parking lot because the effect of the calls changed the dynamic of his worship. He testified that, in totality, the posts and phone calls made him suffer emotional distress and feel uncomfortable, threatened, and harassed. This testimony clearly supplies probable cause to determine that Officer Karpuk subjectively suffered emotional distress. To the extent that Christiansen argues Officer Karpuk did not suffer emotional distress because of his years as a police officer and exposure to more threatening conduct, the conflicting testimony at least raises a reasonable doubt regarding Christiansen's guilt sufficient to warrant the bindover. See *Yost*, 468 Mich at 128.

Because "[a] bindover is required when probable cause exists to support each of the elements of a crime," Christiansen was appropriately bound over to the circuit court. *Plunkett*, 485 Mich at 61. Accordingly, despite the district court's flawed analysis of MCL 750.411s, we nonetheless affirm the circuit court's denial of Christiansen's motion to quash because the bindover was justified by the record. See *Francis*, 347 Mich App at 564 (noting that this Court will not disturb the district court's finding of probable cause "unless the determination is wholly unjustified by the record") (quotation marks and citation omitted).[4]

## III. *CORPUS DELICTI* RULE

Christiansen next argues that the district court erred by admitting his phone calls during the preliminary examination because his statements on the calls constituted confessions and were thus barred by the *corpus delicti* rule. We disagree.

"A reviewing court examines a trial court's decision regarding application of the *corpus delicti* rule for an abuse of discretion." *People v Washington*, 514 Mich 583, 605; 22 NW3d 507

---

[4] On appeal, Christiansen does not challenge the bindover with respect to his felony charge for using a computer to commit a crime.

(2024). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *Id*. A preliminary question of law about the admissibility of evidence is reviewed de novo. *Id*.

"The corpus delicti rule is designed to prevent the use of a defendant's confession to convict him of a crime that did not occur." *People v Konrad*, 449 Mich 263, 269; 536 NW2d 517 (1995). For a defendant's confession to be admitted, there must be independent direct or circumstantial evidence that establishes that a specific injury occurred, and that "some criminal agency" was "the source of the injury." *Id*. at 269-270. However, the *corpus delicti* rule only applies to confessions. *Washington*, 514 Mich at 605. If a defendant does not admit to all the essential elements of a crime, his or her statements are an admission and not a confession. *Id*. at 606-607.

Christiansen's phone conversations are not subject to the *corpus delicti* rule because they were not confessions that he unlawfully posted a message. In the phone calls, he did not state that he was posting a message about Officer Karpuk, that he believed a third party would contact Officer Karpuk, that he intended to cause conduct to make Officer Karpuk feel emotional distress, or that the conduct arising from any postings would cause a reasonable person or Officer Karpuk to suffer emotional distress. See MCL 750.411s(1). Because Christiansen did not admit to all the essential elements of unlawfully posting a message, his statements on the phone calls do not amount to a confession. The district court therefore did not abuse its discretion by admitting the recordings of Christiansen's phone conversations.

## IV. MOTION TO DISMISS

Christiansen lastly argues that the circuit court erred by denying his motion to dismiss on First Amendment grounds because his speech was constitutionally protected. We agree that the circuit court abused its discretion by failing to conduct an analysis of whether Christiansen's statements constituted speech integral to criminal conduct.

"A trial court's decision to deny a motion to dismiss is reviewed for abuse of discretion, and a trial court necessarily abuses its discretion when it makes an error of law." *People v Hawkins*, 340 Mich App 155, 173; 985 NW2d 853 (2022) (quotation marks and citation omitted). A trial court's interpretation of constitutional issues is reviewed de novo. *People v Butler*, 513 Mich 24, 29; 6 NW3d 54 (2024).

Christiansen argues that his phone calls and posts constitute protected speech under the First Amendment because they were meant to criticize the EPD and Officer Karpuk. "The First Amendment of the United States Constitution provides that 'Congress shall make no law . . . abridging the freedom of speech . . . .' " *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 255-256; 833 NW2d 331 (2013), quoting US Const, Am I. Under the Michigan Constitution, "[e]very person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." Const 1963, art 1, § 5. Speech made on the Internet is protected to the same extent as speech made through other forms of media. *Buchanan*, 323 Mich App at 181. However, restriction of speech is permissible in specific instances, including true threats and speech integral to criminal conduct. *People v Burkman*, 513 Mich 300, 328; 15 NW3d 216 (2024).

Christiansen argues that his phone calls and posts were not true threats because they were meant to criticize the EPD and Officer Karpuk. "True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id*. at 328-329 (quotation marks and citation omitted). "To constitute a true threat, defendant must have made the communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat, rather than merely recklessly." *People v Gerhard*, 337 Mich App 680, 693; 976 NW2d 907 (2021) (quotation marks and citation omitted). "[A]t the preliminary examination stage of proceedings, the question is whether it is impossible for a statement to constitute a true threat, not whether it is possible for the trier of fact to deem it not a true threat." *Id*. at 694. The speech at issue should be considered in its context, including current events. *Id*.

The circuit court did not err with respect to its true-threat analysis. It reasoned that Christiansen's statement that he would "give [Officer Karpuk] a surprise" was "100 percent a threat," and therefore not protected speech under the First Amendment. When Christiansen was called by the EPD and asked about his statement, he maintained that he was not making any threats and merely wanted to meet with Officer Karpuk's pastor. Despite this apparent backtracking, it is not impossible for Christiansen's statement to constitute a true threat. See *id*. Given the numerous shootings that have recently occurred at places of worship, Christiansen's statement that he would show up to surprise Officer Karpuk, and his laughter after saying so, could certainly be construed as a physical threat.[5] Accordingly, this statement was not protected by the First Amendment and the circuit court did not abuse its discretion by denying Christiansen's motion to dismiss as to his statement that he would surprise Officer Karpuk at church.[6]

Christiansen additionally argues that his speech was not integral to criminal conduct because his statements were made about a public figure on a matter of public concern. For speech to fall under this exception, it "must be integral to some conduct or scheme that is illegal in nature and independent of the speech that might be used to facilitate or accomplish the conduct or scheme." *Burkman*, 513 Mich at 334-335. This Court has held that "posting a message in violation of MCL 750.411s would not constitute protected speech because the message is integral to the harassment of the victim insofar as it leads to, and is intended to cause, unconsented contacts that terrorize, frighten, intimidate, threaten, harass, or molest the victim." *Buchanan*, 323 Mich App at 185-186. This principle also applies with respect to Christiansen's stalking charge under MCL 750.411h. *Id*. at 185. However, the speech-integral-to-criminal-conduct exception "does not apply if the person posted his or her message about a public figure and on a matter of public concern,

---

[5] See MLive, *America's history of attacks on houses of worship, from Sutherland Springs, Texas to Michigan synagogue* <https://www.mlive.com/data/2026/03/americas-history-of-attacks-on-houses-of-worship-from-sutherland-springs-texas-to-michigan-synagogue.html> (accessed June 22, 2026).

[6] We note that Christiansen's other comments about wanting to pursue a court case, have Officer Karpuk arrested, and get Officer Karpuk's pension are nonphysical threats. While the Michigan Supreme Court has declined to exclude nonphysical threats from constitutional protection, it has also declined to extend the true-threat exception to nonphysical threats. See *Burkman*, 513 Mich at 331-332.

because the First Amendment affords the highest protection for speech about public figures on matters of public concern." *People v Dingee*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 365531); slip op at 5. See also *Buchanan*, 323 Mich App at 188.

Though this issue was raised by the parties in the circuit court, the circuit court conducted no analysis as to whether Christiansen's speech constituted speech integral to criminal conduct. No determination was made regarding whether Officer Karpuk constituted a public figure or whether the messages by Christiansen implicated matters of public concern. Additionally, the circuit court only addressed Christiansen's statement that he was going to surprise Officer Karpuk and did not analyze whether Christiansen's other posts and statements were protected under the First Amendment. We offer no opinion on the merits of this issue and instead vacate the portion of the circuit court's order denying Christiansen's motion to dismiss to the extent that the circuit court failed to consider the speech-integral-to-criminal-conduct exception and remand for the circuit court to determine whether the exception applies to the remainder of Christiansen's speech.

## V. CONCLUSION

We affirm the portion of the circuit court's order denying Christiansen's motion to quash, vacate in part the portion of the order denying Christiansen's motion to dismiss, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mariam S. Bazzi
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado

-11-